UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-03457

FRED NEKOUEE, individually,                    :
                                               :
            Plaintiff,                         :
                                               :
vs.                                            :
                                               :
CHMP-LCP HOTEL DENVER I LLC, a                 :
Delaware limited liability company;            :
                                               :
            Defendant.                         :
_____/

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendant, CHMP-LCP HOTEL DENVER I, LLC, a Delaware limited liability company

(sometimes referred to as "Defendant"), for injunctive relief, and attorney's fees, litigation

expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.      Defendant's property, the Hampton Inn has an address of 6290 N. Tower Road,

Denver, Colorado 80249, in Denver County, Colorado ("Hampton Inn").

3.      Venue is proper in the District of Colorado because venue lies in the judicial district

of the situs of the property.   The Defendant's property is located in and does business within this

judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis, weak limbs, and he requires the use of a wheelchair for mobility.

6.      Mr. Nekouee travels to the Longmont area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

7.      On his way to the Longmont area, after arriving at the Denver International Airport, Fred Nekouee stayed at the Hampton Inn which forms the basis of this lawsuit on May 7, 2019 with a checkout on May 8, 2019.

8.      Fred Nekouee requested an accessible room.

9.      Fred Nekouee stayed in accessible room 224 at the Hampton Inn.

10.      Due to the barriers to access Fred Nekouee encountered at the Hampton Inn, Fred Nekouee is deterred from visiting the Hampton Inn to avail himself of the goods and services offered to the public there.

11.      Fred Nekouee flew into the Denver International Airport near the Hampton Inn in early August 2018 and again on September 29, 2018 through October 3, 2018 to attend a heavy equipment auction.

12.      Fred Nekouee visited Rocky Mountain National Park on October 2, 2018.

13.      The Plaintiff flew into the Denver International Airport near the Hampton Inn on

2

February 3-6, 2019 and again on May 7-10, 2019.

14.     Fred Nekouee attended a heavy equipment auction on May 8, 2019 in Longmont, Colorado.

15.     The Plaintiff returned to the Longmont-Firestone area and visited the Hampton Inn on October 1, 2019, but upon observation that barriers to access at the property had not been removed, he decided not to stay at the Hampton Inn on his October 2019 visit.

16.     The Plaintiff plans to fly into the Denver International Airport again in December 2019 or March 2020 to attend a heavy equipment auction in the Longmont area and to vacation.

17.     Hampton Inn is close to the Denver International Airport, which airport he flies into, to attend heavy equipment auction and dealerships he visits and to vacation.

18.     The Plaintiff likes to stay at moderately-priced hotels like Hampton Inn.

19.     The Plaintiff plans to return to the Hampton Inn again if the barriers to access are removed.

20.     The Plaintiff has encountered architectural barriers at the subject property.

21.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, and have impaired his ability to access the property.

22.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

23.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

24.     The Plaintiff encountered and observed barriers to access in the parking lot and walking surfaces, lobby restrooms, accessible guestroom 224, the restroom in the accessible room

224, the fitness area, pool area, and business center of the Hampton Inn.

25.     The Plaintiff encountered and observed barriers to access in the men's restroom in the lobby; so he tried to enter and use the women's restroom in the lobby.

26.     The cross slope of the walking surface along the accessible route from the parking spaces for disabled patrons near the main entrance to the Hampton Inn is steeper than 1:48 (2%) and is steeper than 3.1%.

27.     The running slope of the access ramp in front of the main entrance to the hotel is steeper than 1:12 and is steeper than 9%.

28.     The Plaintiff is deterred from visiting the Hampton Inn because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

29.      Defendant owns, leases, leases to, or operates a place of public accommodation (an inn, hotel, motel, or other place of lodging) as defined by the ADA, 42 U.S.C. § 12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, the Hampton Inn.

30.     Hampton Inn is a place of lodging.

31.     Hampton Inn is a place of public accommodation.

32.     Defendant is responsible for complying with the obligations of the ADA.

33.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 39 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

34.     Fred Nekouee desires to visit the Hampton Inn not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with

the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

35.     The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

36.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

37.     Preliminary inspections of the Hampton Inn show that ADA violations exist.

38.     Physical conditions at the Hampton Inn are accurately described in each romanette (i) of each lettered subparagraph of paragraph 39 below.

39.     The ADA violations that Fred Nekouee personally encountered or observed at the Hampton Inn include, but are not limited to:

**WALKING SURFACES AND PARKING**

a.     (i) In the parking lot, one of the two parking spaces for disabled patrons does not have upright signage with the International Symbol of Accessibility.   (ii) In the parking lot, one of the two parking spaces for disabled patrons does not have upright signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG § 502.6 and 703.7.2.1.   (iii) The Plaintiff observed this lack of van accessible signage, and it made it difficult for him to find an accessible parking space.   (iv) The action required to install signage with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

**b.**   (i) In the parking lot, some of the parking spaces for disabled patrons do not have adjoining access aisles.   (ii) Some of the parking spaces for disabled individuals do not have adjoining access aisles, in violation of Federal Law 2010, ADAAG §§ 502.1 and 502.3.3.   (iii) Due to the lack of an access aisle next to the disabled parking space the Plaintiff parked in, he had difficulty unloading from and loading back into his vehicle. (iv) The action required to restripe these parking areas to provide adjoining access aisles is easily accomplishable and able to be carried out without much difficulty or expense.

**c.**   (i) In the parking lot, the two van accessible parking spaces closest to the main entrance are less than 132 inches wide.   (ii) This van accessible parking spaces are less than 132 inches wide and are only about 118 inches and 102 inches wide with access aisles that are 60 inches wide, in violation of Federal Law 2010, ADAAG § 502.2.   (iii) The Plaintiff observed these narrow van accessible parking spaces, and they deter him from visiting the Hampton Inn.   (iv) The action required to restripe this parking area to have a van accessible parking spaces that are 132 inches wide at a minimum is easily accomplishable and able to be carried out without much difficulty or expense.

**d.**   (i) In the parking lot, the change in level at the interface of the metal drain cover and the walkway leading to the hotel entrance from parking spaces for disabled patrons is greater than 0.5 inches.   (ii) The change in level at the interface of the metal drain cover and the walkway shown in the photograph below, is greater than 0.5 inches and is about 1 inch, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this change of level and it made his wheelchair unstable going toward the hotel entrance along the accessible route and on the way back it stopped the forward movement of his wheelchair, and he required assistance to cross this

interface.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.





e.    (i) In the parking lot, the change in level at the transition from the asphalt driveway to the concrete gutter at the access ramp shown in the photograph below is greater than 0.5 inches.   (ii) This change of level is greater than 0.5 inches and is about 1 inch, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   (iii) The Plaintiff observed this change of level, and it deters him from visiting the Hampton Inn.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.



f.      (i) The running slope of the walking surface near the hotel entrance shown in the photograph below is steeper than 1:20 (5%).   (ii) The running slope of this walking surface is steeper than the maximum allowed slope of 1:20 (5%) and is steeper than 9%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this running slope, and it made his wheelchair unstable, and it was difficult for him to ascend this slope to enter the hotel.   (iv) The action required to reduce this slope is easily accomplishable and able to be carried out without much difficulty or expense.



g.     (i) The cross slope of the walking surface near the hotel entrance shown in the photograph below is steeper than 1:48 and steeper than 3.1%.   (ii) The cross slope of this walking surface along the accessible route to the hotel entrance is steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this slope of this walking surface, and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.



h.   (i) The cross slope of the walking surface near accessible parking shown in the photograph below is steeper than 1:48 and steeper than 3.1%.   (ii) The cross slope of this walking surface along the accessible route to the hotel entrance is steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this slope of this walking surface, and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.



i.      (i) The running slope of the access ramp in front of the main entrance to the hotel has a running slope steeper than 1:12 (8%) and steeper than 9%.   (ii) The running slope of this access ramp is steeper than 1:12 (8%) and steeper than 12%, in violation of Federal Law 2010, ADAAG § 405.2.   (iii) Due to the steep running slope of this access ramp, the Plaintiff required assistance to ascend and descend this ramp in his wheelchair.   (iv) The action required to reduce the running slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

j.      (i) The access ramp shown in the photograph below does not have a landing at the top of the ramp run.   (ii) This access ramp does not have a landing at the top of the ramp run, in violation of Federal Law 2010, ADAAG § 405.7.   (iii) Due to the lack of a landing at the top of the access ramp, the Plaintiff had difficulty keeping his wheelchair stable while

turning toward the entrance.   (iv) The action required to construct a top landing to this ramp is easily accomplishable and able to be carried out without much difficulty or expense.



k.   (i) The access ramp shown in the photograph below does not have a landing at the top of the ramp run.   (ii) This access ramp does not have a landing at the top of the ramp run, in violation of Federal Law 2010, ADAAG § 405.7.   (iii) Due to the lack of a landing at the top of the access ramp, the Plaintiff had difficulty keeping his wheelchair stable while moving toward the entrance.   (iv) The action required to construct a top landing to this ramp is easily accomplishable and able to be carried out without much difficulty or expense.



**MEN'S RESTROOM IN THE LOBBY**

l.   (i) The time for the door to the men's restroom in the lobby to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 404.2.8.1. (iii) The Plaintiff encountered this condition while moving in his wheelchair, and due to the short elapsed time for this door to close from an open position of 90 degrees, the Plaintiff required assistance to enter this men's restroom.   (iv) The action required to adjust the closing time of this door is easily accomplishable and able to be carried out without much difficulty or expense.

m.   (i) In the men's restroom in the lobby, the width of the toilet compartment area is less than 60 inches.   (ii) The width of this accessible toilet compartment area is less than a minimum of 60 inches and is only about 41 inches wide since it is blocked by the counter to the sink, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.   (iii) Due to

14

the lack of width of this accessible toilet compartment, the Plaintiff had difficulty maneuvering his wheelchair into position to use the toilet.   (iv) The action required to alter the counter to the sink to provide a minimum width of 60 inches is easily accomplishable and able to be carried out without much difficulty or expense.

n.   (i) In the men's restroom in the lobby, rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side of the centerline of the toilet.   (ii) This rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side of the centerline of the water closet, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to the location of the rear wall grab bar, the Plaintiff had difficulty using it to transfer himself from his wheelchair to the toilet.   (iv) The action required to relocate/replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

o.   (i) In the men's restroom in the lobby, the toilet paper dispenser centerline is not between 7 and 9 inches from the front of the toilet.   (ii) The toilet paper dispenser centerline is not between 7 and 9 inches from the front of the toilet and is about 4 inches or less from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7. (iii) Due to the location of the toilet paper dispenser, the Plaintiff could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

p.   (i) In the men's restroom in the lobby, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor and is about 47 inches

above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to the height of this mirror's reflecting surface above the floor, the Plaintiff could not see his face in this mirror from his wheelchair.   (iv) The action required to relocated this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

q.   (i) In the men's restroom in the lobby, the water supply and drain pipes under the sink are not insulated.   (ii) As shown in the photograph below, the water supply and drain pipes under this sink are not insulated, in violation of Federal Law 2010, ADAAG § 606.5. (iii) The Plaintiff used this sink at the risk of skin burns and injury to his legs due to the lack of insulation on the water supply and drain pipes.   (iv) The action required to insulate the water supply and drain pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



**WOMEN'S RESTROOM IN THE LOBBY**

r.   (i) The time for the door to the women's restroom in the lobby to close from an

open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds.  (ii) This condition is in violation of Federal Law 2010, ADAAG § 404.2.8.1. (iii) The Plaintiff encountered this condition while moving in his wheelchair, and due to the short elapsed time for this door to close from an open position of 90 degrees, the Plaintiff required assistance to enter this women's restroom.  (iv) The action required to adjust the closing time of this door is easily accomplishable and able to be carried out without much difficulty or expense.

s.    (i) In the women's restroom in the lobby, the width of the toilet compartment area is less than 60 inches.   (ii) The width of this accessible toilet compartment area is less than a minimum of 60 inches and is only about 42 inches wide since it is blocked by the counter to the sink, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.   (iii) Due to the lack of width of this accessible toilet compartment, the Plaintiff had difficulty maneuvering his wheelchair into position to use the toilet.   (iv) The action required to alter the counter to the sink to provide a minimum width of 60 inches is easily accomplishable and able to be carried out without much difficulty or expense.

t.    (i) In the women's restroom in the lobby, rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side of the centerline of the toilet.   (ii) This rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side of the centerline of the water closet, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) The Plaintiff observed the location of this rear wall grab bar, and it deters him from staying at the Hampton Inn.   (iv) The action required to relocate/replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

u.   (i) In the women's restroom in the lobby, the water supply and drain pipes under the sink are not fully insulated.   (ii) The water supply and drain pipes under this sink are not fully insulated, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) The Plaintiff used this sink at the risk of skin burns and injury to his legs due to the water supply and drain pipes not being fully insulated.   (iv) The action required to insulate the water supply and drain pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In the women's restroom in the lobby, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor and is about 49 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to the height of this mirror's reflecting surface above the floor, the Plaintiff could not see his full face in this mirror from his wheelchair when he used the sink.   (iv) The action required to relocated this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

**BREAKFAST AREA**

w.   (i) In the breakfast area, the buttons to operate the juice dispenser, the top of the oatmeal warmer, the fruit stand, and the top most bread and muffin container are all located higher than 48 inches above the floor.   (ii) In the breakfast area, these items are all located higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to the height of these items above the floor, the Plaintiff tried but could not reach them from his wheelchair.   (iv) The action required to relocate these items or to lower the counter on

which they are placed or mounted is easily accomplishable and able to be carried out without much difficulty or expense.

**ACCESSIBLE GUESTROOM 224**

x.    (i) The elapsed time for the entrance door to guestroom 224 to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The elapsed time for this door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) The Plaintiff encountered this door, and due to the short time it took to close, he required assistance to enter and to exit accessible guestroom 224.   (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

y.    (i) In accessible guestroom 224, the entrance door pull side maneuvering clearance in a front approach beyond the latch and parallel to the door way is less than 18 inches. (ii) This entrance door pull side maneuvering clearance in a front approach beyond the latch and parallel to the door way is less than 18 inches and is only about 4 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of door pull side maneuvering clearance, the Plaintiff required assistance to exit guestroom 224 in his wheelchair.

z.    (i) In accessible guestroom 224, the clear floor space between the bed and the desk is less than 30 inches.   (ii) This clear floor space is less than 30 inches, in violation of Federal Law 2010, ADAAG § 305.   (iii) Due to the lack of clear floor space between the bed and the desk, the Plaintiff could not maneuver his wheelchair to use the desk or to get through this space in his wheelchair.   (iv) The action required to relocate or to replace

the desk is easily accomplishable and able to be carried out without much difficulty or expense.

aa.   (i) In accessible guestroom 224, the coat hangers hanging on the rod in the closet are higher than 48 inches above the floor.   (ii) These coat hangers are higher than 48 inches above the finish floor and as high as about 60 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) The Plaintiff observed the height of the coat hangers above the floor, and it deters him from staying at the Hampton Inn.   (iv) The action required to relocate the clothes' rod in this closet is easily accomplishable and able to be carried out without much difficulty or expense.

bb.   (i) In accessible guestroom 224, the iron when mounted in its wall-mounted holder in the closet is higher than 48 inches above the floor.   (ii) This iron when mounted in its wall-mounted holder is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) The Plaintiff tried but could not reach this iron in its holder from his wheelchair.   (iv) The action required to relocate this iron holder is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN ACCESSIBLE GUESTROOM 224**

cc.   (i) In accessible guestroom 224, the door push side maneuvering clearance in a latch approach perpendicular to the doorway, where the wall clearance beyond the latch parallel to the doorway is at least 24 inches, is less than 42 inches.   (ii) This door push side maneuvering clearance is less than the minimum required clearance of 42 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this door push side maneuvering clearance, the Plaintiff required assistance to enter the restroom in accessible

guestroom 224.   (iv) The action required to increase the door push side maneuvering clearance is easily accomplishable and able to be carried out without much difficulty or expense.

dd.   (i) In the restroom of accessible guestroom 224, the restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than 18 inches.   (ii) This door pull side maneuvering clearance is less than the minimum required clearance of 18 inches and is only about 6 inches, as shown in the photograph below, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of door pull side maneuvering clearance, the Plaintiff required assistance to exit this restroom.   (iv) The action required to relocate the sink and counter in this restroom is easily accomplishable and able to be carried out without much difficulty or expense.



ee.   (i) The restroom of accessible guestroom 224 does not have a shower spray unit with a hose that can be used as both a fixed-position shower head and as a hand-held shower.   (ii) This restroom does not have a shower spray unit with a hose that can be used

as both a fixed-position shower head and as a hand-held shower, in violation of Federal Law 2010, ADAAG § 607.6.   (iii) Due to the lack of an adjustable shower spray unit with a hose, the Plaintiff required assistance to bathe.   (iv) The action required to install an ADA compliant shower spray unite and hose is easily accomplishable and able to be carried out without much difficulty or expense.

ff.    (i) In the restroom of accessible guestroom 224, the clearance width parallel to the bathtub is less than 30 inches.   (ii) The clearance width parallel to this bathtub is blocked by the toilet and is less than 30 inches, in violation of Federal Law 2010, ADAAG § 607.2.   (iii) Due to this lack of adequate clearance width, the Plaintiff required assistance to enter the bathtub.

gg.    (i) The restroom of accessible guestroom 224 does not have a permanent seat at the head end of the bathtub or a removable in-tub seat capable of secure placement.   (ii) The restroom of accessible guestroom 224 does not have a permanent seat at the head end of the bathtub or a removable in-tub seat capable of secure placement, in violation of Federal Law 2010, ADAAG §§ 607.3 and 610.2.   (iii) Due to the lack of a seat, the Plaintiff required assistance to bathe in this restroom.   (iv) The action required to install a permanent seat at the head end of the bathtub or to provide a removable in-tub seat is easily accomplishable and able to be carried out without much difficulty or expense.

hh.    (i) In the restroom of accessible guestroom 224, only one grab bar is installed on the back wall of the bathtub.   (ii)   This bathtub does not have two grab bars on the back wall of the bathtub, in violation of Federal Law 2010, ADAAG §§ 607.4.1 and 607.4.2.1.   (iii) Due to the lack of grab bars on the back wall of this bathtub, the Plaintiff required assistance to bathe.   (iv) The action required to install grab bars is easily

accomplishable and able to be carried out without much difficulty or expense.

ii.   (i) In the restroom of accessible guestroom 224, there is no grab bar on the control end wall of the bathtub.   (ii) There is no grab bar on the control end wall of this bathtub, in violation of Federal Law 2010, ADAAG §§ 607.4.1.2 and 607.4.2.2.   (iii) Due to the lack of a grab bar on the control end wall of this bathtub, the Plaintiff required assistance to operate the controls to the tub and to bathe.   (iv) The action required to install a grab bar on the control end wall of this bathtub is easily accomplishable and able to be carried out without much difficulty or expense.

jj.   (i) In the restroom of accessible guestroom 224, the bathtub water controls are not located between the centerline and the open side of the bathtub.   (ii) The bathtub water controls are not located between the centerline and the open side of this bathtub, in violation of Federal Law 2010, ADAAG §§ 607.5 and 608.5.   (iii) Due to the location of the water controls, the Plaintiff could not operate these controls from his wheelchair outside of the bathtub.   (iv) The action required to relocate these water controls is easily accomplishable and able to be carried out without much difficulty or expense.

kk.   (i) In the restroom of accessible guestroom 224, the shower spray head is higher than 48 inches above the floor of the bathtub.   (ii) This shower spray head is higher than 48 inches above the finish floor of the bathtub and as high as about 77 inches above the finish floor of the bathtub, in violation of Federal Law 2010, ADAAG §§ 308.2 and 608.6. (iii) Due to the height of this shower head above the floor of the bathtub, the Plaintiff required further assistance to bathe.   (iv) The action required to install an ADA compliant shower head and hose is easily accomplishable and able to be carried out without much difficulty or expense.

ll.    (i) In the restroom of accessible guestroom 224, the lavatory sink does not have knee or toe clearance under it.   (ii) As shown in the photograph below, this sink does not have knee or toe clearance under it which does not allow for a forward approach in a wheelchair, in violation of Federal Law 2010, ADAAG §§ 305 and 306.2.3.   (iii) Due to the lack of knee or toe clearance under this sink, in his wheelchair, the Plaintiff required assistance to wash his hands.   (iv) The action required to provide clearance under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



mm.        (i) In the restroom of accessible guestroom 224, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) As shown in the photograph under subparagraph (nn) above, the centerline of this toilet paper dispenser is not located between 7 and 9 inches from the front of the toilet and is actually behind the centerline of the toilet, in violation of Federal Law 2010, ADAAG § 604.7. (iii) Due to the location of this toilet paper dispenser, the Plaintiff could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much

difficulty or expense.

nn.   (i) In the restroom of accessible guestroom 224, the toilet area does not have side wall grab bar and a side wall that is located between 16 and 18 inches from the centerline of  the toilet.   (ii) This toilet area does not have a side wall grab bar and its side wall is located greater than 18 inches from the centerline of the toilet, in violation of Federal Law 2010, ADAAG §§ 604.5.1 and 604.2.   (iii) Due to the lack of a side wall grab bar and the distance to the side wall from the centerline of the toilet, the Plaintiff required assistance to use the toilet.

oo.   (i) In the restroom of accessible guestroom 224, the flush control of the toilet is not mounted on the open and wide side of the toilet.   (ii) The flush control of this toilet is not mounted on its open and wide side, in violation of Federal Law 2010, ADAAG § 604.6. (iii) Due to the location of this flush control, the Plaintiff could not flush the toilet from his wheelchair.   (iv) The action required to replace the toilet tank with a flush control on the other side is easily accomplishable and able to be carried out without much difficulty or expense.

pp.   (i)   In the restroom of accessible guestroom 224, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and is as high as about 66 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor, and it deters him from staying at the Hampton Inn.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

qq.   (i) In the restroom of accessible guestroom 224, the towel shelf is higher than

48 inches above the floor.   (ii) This towel shelf is higher than 48 inches above the finish

floor and is as high as about 56 inches above the finish floor, and it is outside of the reach

range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.

(iii) Due to the height of this towel shelf above the floor, the Plaintiff could not reach a

towel from his wheelchair.   (iv) The action required to relocate this towel shelf is easily

accomplishable and able to be carried out without much difficulty or expense.

**POOL AREA**

rr.   (i) The entrance to the pool area does not have signage with the International

Symbol of Accessibility.   (ii) The entrance to the pool area does not have signage with the

International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG §§ 216.6

and 703.7.2.1.   (iii) The Plaintiff observed the lack of signage with the International

Symbol of Accessibility at the entrance to the pool, and it deters him from visiting Hampton

Inn.   (iv) The action required to install signage with the International Symbol of

Accessibility at the entrance to the pool is easily accomplishable and able to be carried out

without much difficulty or expense.

ss.   (i) The force needed to open the entrance door to the pool area is greater than 5

pounds.   (ii) The force necessary to fully open the entrance door to the pool area is greater

than 5 pounds and is about 10 pounds, pertaining to the continuous application of force

necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii)

Due in part to the force necessary to open this entrance door to the pool, the Plaintiff

required assistance to open this door.   (iv) The action required to adjust the force needed

to fully open this entrance door is easily accomplishable and able to be carried out without

much difficulty or expense.

tt.    (i) In the pool area, the wall-mounted telephone is higher than 48 inches above the floor.   (ii) This wall-mounted telephone is higher than 48 inches above the finish floor and is as high as about 55 inches above the finish floor, and it is outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG §§ 404.2.7 and 603.4.   (iii) Due to its height above the floor, the Plaintiff could not reach this telephone from his wheelchair.   (iv) The action required to relocate this telephone is easily accomplishable and ble to be carried out without much difficulty or expense.

uu.    (i) In the restroom in the pool area, the rear wall grab bar behind the toilet is less than 36 inches long.   (ii) This rear wall grab bar is less than a minimum of 36 inches long, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) The Plaintiff observed this short rear wall grab bar, and it deters him from staying at the Hampton Inn.   (iv) The action required to replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

vv.    (i) In the restroom in the pool area, the water supply and drain pipes under the sink are not insulated.   (ii) The water supply and drain pipes under this sink are not insulated, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) Due to the lack of insulation of these pipes, the Plaintiff risked skin burns and injury to his legs when he used this sink.   (iv) The action required to insulate the pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.

**HALLWAY**

ww.       (i) The elapsed time for the side exit door to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The elapsed time for this door to close from an open position of 90 degrees to 12 degrees from the latch is about

3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1. (iii) The Plaintiff encountered this door, and due to the short time it took to close, he required assistance to enter this side door.  (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

xx.    (i) The elapsed time for the hallway door to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.  (ii) The elapsed time for this door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1. (iii) The Plaintiff encountered this door, and due to the short time it took to close, he required assistance to enter this door.  (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

**FITNESS CENTER**

yy.    (i) The elapsed time for the entrance door to the fitness center to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.  (ii) The elapsed time for this door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.  (iii) The Plaintiff encountered this door, and due to the short time it took to close, he required assistance to enter this door.  (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

zz.    (i) The force needed to open the entrance door to the fitness area is greater than 5 pounds.  (ii) The force necessary to fully open the entrance door to the fitness area is

greater than 5 pounds and is about 10 pounds, pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. (iii) Due in part to the force necessary to open this entrance door to the fitness area, the Plaintiff required assistance to open this door. (iv) The action required to adjust the force needed to fully open this entrance door is easily accomplishable and able to be carried out without much difficulty or expense.

aaa. (i) The entrance to the fitness area does not have signage with the International Symbol of Accessibility. (ii) The entrance to the fitness area does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG §§ 216.6 and 703.7.2.1. (iii) The Plaintiff observed the lack of signage with the International Symbol of Accessibility at the entrance to the fitness area, and it deters him from visiting Hampton Inn. (iv) The action required to install signage with the International Symbol of Accessibility at the entrance to the fitness area is easily accomplishable and able to be carried out without much difficulty or expense.

bbb. (i) In the fitness center, the clear floor or ground space between stationary exercise equipment is less than 30 inches. (ii) The clear floor or ground space between stationary exercise equipment is less than 30 inches preventing access by an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 305. (iii) The Plaintiff observed this lack of clear floor space between exercise equipment and it deters him from staying at the Hampton Inn. (iv) The action required to provide a minimum of 30 inches of clear floor space between this stationary exercise equipment is easily accomplishable and able to be carried out without much difficulty or expense.

**BUSINESS CENTER**

ccc.      (i) The elapsed time for the entrance door to the business center to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds. (ii) The elapsed time for this door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) The Plaintiff encountered this door, and due to the short time it took to close, he required assistance to enter this door.   (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

ddd.      (i) The force needed to open the entrance door to the business center is greater than 5 pounds.   (ii) The force necessary to fully open the entrance door to the business center is greater than 5 pounds and is about 10 pounds, pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this entrance door to the business center, the Plaintiff required assistance to open this door.   (iv) The action required to adjust the force needed to fully open this entrance door is easily accomplishable and able to be carried out without much difficulty or expense.

40.      All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

41.      The discriminatory violations described in paragraph 39 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's places of public accommodation in order to photograph and measure all of the discriminatory acts violating

the ADA and all of the barriers to access and to determine all of the areas of non-compliance with the Americans with Disabilities Act to which he was denied access.

42.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated, will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

43.     Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.  Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

44.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

45.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR

36.505.

46.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

47.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

48.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Hampton Inn and the parking lot, access aisles and walkways along the accessible route, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      That the Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates

Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____ _____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*